### John A. Russell Corporation v. James W. Bohlig

[739 A.2d 1212]

No. 98-014

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 27, 1999

Motion for Reargument Denied September 20, 1999

*David Cleary* and *John R. Dean* of *Cleary Shahi Associates, P.C.*, Rutland, for Plaintiff-Appellee.

*Alan P. Biederman* of *Biederman & Rakow, P.C.*, Rutland, for Defendant-Appellant.

**Johnson, J.** Former employee James Bohlig appeals from a jury verdict on his counterclaim for breach of an employment contract by his former employer, the John A. Russell Corporation. Mr. Bohlig contends that the court erred by concluding that the employment contract was ambiguous and thus by allowing the jury to construe its meaning. He also claims that the court erred by admitting evidence of his character in violation of V.R.E. 404, 405 and 608. We agree in both respects, and thus, reverse and remand for a new trial on the counterclaim.[1] The Corporation cross-appeals the court's determination that it waived prejudgment interest for the period prior to January 1, 1992. We affirm the court's decision on interest.

In May 1989, Mr. Bohlig was hired as executive vice president and chief operating officer by the John A. Russell Corporation, a general contracting company in Rutland, Vermont. The parties entered into an employment contract for a term of three years on May 16, 1989. Shortly after starting his job, Mr. Bohlig began renovating his house in Shrewsbury using employees and equipment of the Corporation with the permission of the Corporation. The cost of the renovations eventually exceeded $600,000. At trial, the Corporation claimed it gave Mr. Bohlig notice in November 1991 that he was terminated effective December 31, 1991. Mr. Bohlig claimed he did not know of the termination until he returned to work in January 1992 and found his belongings had been removed from his office. The parties also disputed the reason for the termination.

Subsequently, the Corporation brought suit against Mr. Bohlig for breach of the employment contract, alleging inappropriate self-dealing, breach of fiduciary responsibility, and breach of employment obligations arising from the contract. At trial, the Corporation maintained that Mr. Bohlig was dishonest to the Corporation in representing the scope of his home renovations and his ability to pay for the renovations. It claimed that he still owed a balance of $218,413.20 for the construction work. Mr. Bohlig counterclaimed for

---

[1] Mr. Bohlig also argues that the court erred by instructing the jury that the Corporation was required to prove its defense of dishonesty by merely a preponderance of the evidence, rather than by clear and convincing evidence. We do not reach this issue because we reverse on other grounds.

breach of the employment contract, maintaining that the amount he owed for construction work was offset by the amount the Corporation owed him in unpaid benefits under the employment contract. Specifically, he contended that the Corporation failed to pay him (1) a guaranteed bonus of $20,000 per year, (2) relocation expenses of $129,938.62, and (3) twelve months of severance pay and employment benefits in lieu of twelve months notice, amounting to over $110,000.

Mr. Bohlig's three claims for breach of contract were based on three provisions in the parties' employment contract. At trial, the parties did not dispute that, under paragraph 2 of the contract, Mr. Bohlig was entitled to a minimum annual bonus of $20,000.00. Mr. Bohlig claimed that he was entitled to $10,000 for the half year he worked in 1989, $20,000 for 1990, $20,000 for 1991, and $20,000 for 1992 as part of his severance pay. The Corporation maintained, however, that Mr. Bohlig had waived his right to the bonus at meetings during 1989 and 1990 at which employees agreed there would be no bonuses because the company was not doing well.

The claim for relocation-expense reimbursement also arose under paragraph 2 of the contract, which details the relocation expenses that the employer will reimburse and provides further that it was the intent of the parties that the relocation would "be revenue-neutral to Employee after payment of all income taxes on these reimbursements, except as to the relative differences in the price of Employee's current and new residences." At trial, the Corporation maintained that it had paid Mr. Bohlig the moving expenses owed under paragraph 2 totaling $7,136.00.

The claim for severance pay and benefits was based upon paragraph 4 of the contract, which states:

> *Termination:* Employer may terminate this contract after twenty four (24) months or any renewal period hereof, upon twelve (12) months written notice, (or pay and other benefits for a twelve month period in lieu of said notice). Employer may terminate this Contract without said twelve month notice and with no further obligation (other than wages and benefits earned but not paid) only in the following instances:
>
> 1) for Employee's dishonesty in the performance of his duties or wanton disregard of his duties;
>
> 2) at Employee's death; or
>
> 3) after any disability has prevented Employee from performing his duties for a period of six (6) consecutive months.

Whether Mr. Bohlig was terminated in November 1991 or January 1992, he was terminated after twenty-four months but before the three-year term of the contract expired. At trial, Mr. Bohlig maintained that, under paragraph 4, he was entitled to twelve months' severance pay and benefits because he did not get twelve months' notice. The Corporation contended that, under paragraph 4, it could terminate Mr. Bohlig after twenty-four months with no notice or severance pay. In the alternative, the Corporation claimed that it was not obligated to give Mr. Bohlig notice or severance pay because he was terminated for "dishonesty in the performance of his duties."

The jury rendered a verdict in favor of the Corporation for $218,413.20. It rendered a verdict for Mr. Bohlig for $2,828.25. Pursuant to the parties' stipulation, the court calculated interest on each award from January 1, 1992, and awarded the Corporation $365,012.89, the difference between the two awards with interest. Mr. Bohlig does not appeal from the verdict for the Corporation. He appeals from the verdict on his counterclaim on several grounds. We reach the following issues: (1) whether the court erred in concluding the employment contract was ambiguous and allowing the jury to construe it, (2) whether the court erred in instructing the jury that adequate and sufficient grounds for termination was a defense to any alleged breach of the employment contract, and (3) whether the court erred in admitting certain evidence of Mr. Bohlig's character. The Corporation cross-appeals from the court's decision that it is not entitled to any prejudgment interest for the period before January 1, 1992.

## I. Jury Instructions
### A.

We first address Mr. Bohlig's claim that the court erred in concluding that paragraph 4 is ambiguous, and thus in instructing the jury to construe it. Whether the contract is ambiguous is a matter of law to be decided by the court. See *Morrisseau v. Fayette*, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). If the court concludes the writing is unambiguous, it must declare the interpretation as a matter of law. See *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999). If the court concludes that the writing is ambiguous, the interpretation of the contract is a question of fact to be decided by the jury. See *id.* We review the question of whether the contract is ambiguous de novo because it is a question of law.

To determine the meaning of a specific provision of a contract, we consider the whole instrument and construe it in harmony if possible. See *Morrisseau*, 164 Vt. at 366, 670 A.2d at 826. We "do not read terms into the contract unless they arise by necessary implication." *Id.* at 366-67, 670 A.2d at 826. Although we may consider the circumstances surrounding the making of the agreement, this evidence "may not be used to vary the terms of an unambiguous writing." *Kipp*, 169 Vt. at 107, 732 A.2d at 131.

The disputed language in paragraph 4 states: "Employer may terminate this contract after twenty four (24) months or any renewal period hereof, upon twelve (12) months written notice, (or pay and other benefits for a twelve month period in lieu of said notice)." The Corporation contends that this language allows the employer to terminate the contract (1) after twenty-four months with no notice or severance pay, or (2) during the first twenty-four months upon twelve months' notice, or (3) during the first twenty-four months upon twelve months' pay and benefits. Under this construction, the employer may terminate the contract during the first two years only upon twelve months' notice or severance pay, but after twenty-four months, it may terminate the contract for no reason with no notice or severance pay. The Corporation contends that it does not owe Mr. Bohlig any severance pay or benefits because it terminated the contract after twenty-four months. In the alternative, the Corporation claims it terminated Mr. Bohlig for dishonesty in the performance of his duties.

Mr. Bohlig maintains that the sentence has only one possible meaning; it allows the employer to terminate the contract after twenty-four months upon (1) twelve months' notice, or (2) twelve months' pay and benefits. Under this construction, the employer may not terminate the contract during the first two years, but after those two years it may terminate the contract upon twelve months' notice or severance pay. Thus, Mr. Bohlig contends that the Corporation was entitled to terminate the contract because the first twenty-four months had expired, but it was required to give him notice or severance pay. As the Corporation gave no notice, he claims he is entitled to twelve months' severance pay and benefits unless the Corporation can show he was dishonest in the performance of his duties.

The trial court concluded that the contract was ambiguous because both constructions are reasonable. We conclude that there is no ambiguity. The sentence in dispute has only one reasonable construction, the one argued by Mr. Bohlig.

We reject the Corporation's construction for three reasons. First, the construction proposed by the Corporation is inconsistent with paragraph 1 of the contract, which sets forth the term of employment:

> *Term:* Employer hires Employee for the position of Executive Vice President — Chief Operating Officer of the John A. Russell Corporation for an initial *three year term* beginning June 1, 1989 and ending May 31, 1992; and thereafter from year to year, unless terminated as hereinafter provided for.

(Emphasis added.) The Corporation's construction of paragraph 4 creates a two-year term of employment, which conflicts with the three-year term of paragraph 1. Mr. Bohlig's construction harmonizes the two paragraphs: after two years, he could be terminated by twelve months' notice, reiterating the term of employment at three years. Viewing the contract as a whole and construing the provisions in harmony, this is the only reasonable construction.

Second, if the sentence provides a list of three permissible means of termination as the Corporation contends, it is grammatically incorrect because it is missing the third preposition. It lists "after" twenty-four months, "upon" twelve months' notice, and fails to provide a preposition for the third clause, such as "upon" twelve months' pay and benefits. Generally, we do not read additional terms in to the contract unless necessarily implied.

Finally, if this is a list of three, we can conceive of no reason to enclose the third means of termination in parenthesis. On the other hand, under Mr. Bohlig's construction, the general means of termination is by twelve months' notice, but twelve months' pay in lieu of notice is permitted parenthetically. In this context, the parenthesis make sense. The construction proposed by the Corporation creates ambiguity where none exists.

In sum, we reject the Corporation's claim that it could terminate Mr. Bohlig after twenty-four months without notice or severance pay. We, therefore, hold that the trial court erred as a matter of law by concluding that the contract is ambiguous and by submitting the contract to the jury to interpret as a matter of fact. We do not reverse on this ground, however. To show prejudicial error on appeal of a civil case involving multiple theories of liability, the appellant must show error affecting all theories of recovery or error affecting the theory upon which the jury relied. See *Contractor's Crane Serv. v. Vermont Whey Abatement Auth.*, 147 Vt. 441, 446, 519 A.2d 1166, 1171 (1986). Here, we cannot determine from the general

verdict whether the jury was convinced by the erroneous contract construction that the Corporation could terminate Mr. Bohlig without notice or severance pay after twenty-four months. It could just as well have been convinced under the alternative theory that the Corporation terminated Mr. Bohlig without notice or severance pay for dishonesty in the performance of his duties.

### B.

Next, we address Mr. Bohlig's claim that the court erred by instructing the jury that he could not recover for any alleged breach of his employment contract if the Corporation showed that it had "just cause" or "adequate and sufficient grounds" under the terms of the contract to terminate him. Mr. Bohlig maintains that this instruction was erroneous because it lowered the standard in the contract from permitting termination for "dishonesty in the performance of his duties" to permitting termination for any "just cause" or "adequate and sufficient grounds." He argues the instruction was also wrong because it improperly made "just cause" for termination a defense to all three breach-of-contract claims. The termination was, however, a defense only to the paragraph 4 claim for severance pay, and not to the paragraph 2 claims for relocation expenses and bonuses.

The specific instruction to which he objects states:

If you are satisfied that the defendant's actions or inactions constitute *adequate and sufficient grounds* for Russell Corporation to fire him *under the terms of his contract, as you find them to be*, then you must deny defendant recovery for any alleged breach of his employment contract.

(Emphasis added.) In reviewing a jury instruction, we do not examine a single sentence in isolation; rather, we consider the jury charge as a whole. See *Turgeon v. Schneider*, 150 Vt. 268, 276, 553 A.2d 548, 553 (1988). We will uphold the jury charge if it conveys the true spirit and doctrine of the law and cannot fairly be said to have misled the jury. See *id.*

We conclude that the jury could not have been misled by the court's reference to "adequate and sufficient grounds." First, the language to which Mr. Bohlig objects was modified later in the sentence by "under the terms of his contract, as you find them to be." The court did not change the standard in the contract to "adequate and sufficient

grounds for termination," but rather to "adequate and sufficient grounds under the terms of the contract." Because the court presented the jury with two alternative constructions of the contract, this instruction allowed the jury to consider whatever standard it found the contract established.

Further, the court's instruction on paragraph 4 and the severance-pay claim clearly stated from the beginning that the jury had to determine whether the contract allowed termination (1) for no reason because Mr. Bohlig had been employed for more than twenty-four months or (2) only for Mr. Bohlig's dishonesty in the performance of his duties. The court reiterated the "dishonesty standard" again later by stating that it was the Corporation's burden to prove that Mr. Bohlig was dishonest in the performance of his duty. Examining the entire charge in this case, the jury could not have been misled by the instruction on paragraph 4 to believe that the Corporation was merely required to prove "just cause" or "adequate and sufficient grounds" for termination.[2]

■ Similarly, we conclude that the jury was not misled by the court's error in stating that a justified termination was a defense to "any alleged breach of his employment contract." This instruction in isolation is in error because the termination was irrelevant to the paragraph 2 claims for relocation expenses and bonuses. Given the context of the quoted language, however, the jury could not have been misled. The court instructed the jury on the paragraph 2 claims first and then explained the Corporation's waiver defense to the bonus claim. The court then explained the paragraph 4 claim for severance pay and the defense of dishonesty. At the end of the instructions on paragraph 4, the court stated the language to which Mr. Bohlig objects. Considering the instruction as a whole, it is clear that this language refers to the paragraph 4 claim alone. The jury charge properly conveyed the spirit and doctrine of the law.

## II. Character Evidence

Mr. Bohlig claims next that the court violated V.R.E. 404, 405 and 608 by admitting evidence that Mr. Bohlig was terminated from his previous employment for dishonesty involving his expense accounts. He contends that this is character evidence improperly admitted to

---

[2] Eliminating the alternative contract construction will eliminate this part of the jury charge in a new trial in any event; thus, if there was any error, it would not arise on remand.

prove he acted dishonestly in his employment with the Corporation in this case. The general rule in V.R.E. 404(a) is that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." V.R.E. 404(a) also lists exceptions to the general rule, including the exception for evidence of a witness's credibility covered by V.R.E. 608. This is the only exception relevant in this case. In addition, V.R.E. 404(b) allows evidence of specific instances of conduct for purposes other than "to prove the character of a person in order to show that he acted in conformity therewith," and V.R.E. 405(b) allows evidence of specific instances of conduct to prove character if the character of the person is an essential element or the claim or the defense.

On appeal, the Corporation first argues that evidence of Mr. Bohlig's dishonesty at his former employment is not character evidence because character evidence comes only in the form of reputation evidence. We reject this contention. V.R.E. 404, 405 and 608 contemplate three forms of character evidence: (1) opinion, (2) reputation, and (3) specific instances of conduct. See also 22 C. Wright & K. Graham, Federal Practice and Procedure § 5233, at 354 (1978) ("under Rule 404 'character' is the thing to be proved and 'reputation' is simply one way of proving it"). The Corporation further contends that, if the evidence at issue is character evidence, it was admissible (1) under V.R.E. 404(b) to provide the context in which Mr. Bohlig was hired by the Corporation, (2) under V.R.E. 405(b) to prove an essential element of the defense, or (3) under V.R.E. 608(b) to show Mr. Bohlig's character for untruthfulness.

■ The Corporation first asserts that the evidence — that Mr. Bohlig was terminated from his previous employment for dishonesty — was admissible under V.R.E. 404(b) to provide the context in which the Corporation hired Mr. Bohlig. In criminal cases, we have upheld the admission of evidence of other misconduct that is part of the context of a crime charged where it is so interwoven with the crime charged it cannot be separated without skewing the narrative. See *State v. Forbes,* 161 Vt. 327, 332, 640 A.2d 13, 16 (1993). Thus, evidence of other misconduct may be admissible if excluding the evidence would leave gaps in the narrative detracting from its credibility. See *id.* This rule is not applicable here, however, because the circumstances of Mr. Bohlig's termination by a previous employer is not interwoven with the breach of contract alleged in this case and can be excluded without affecting the narrative on the breach of contract at

all. Indeed, Mr. Russell admitted at trial that Mr. Bohlig's previous termination had nothing to do with the termination of the contract in this case.

The Corporation next contends that the evidence was admissible to prove an essential element of the defense, Mr. Bohlig's dishonesty. See V.R.E. 405(b) (where character of person is an essential element of claim or defense, proof may be made by specific instances of conduct). The defense was that the Corporation terminated Mr. Bohlig for "dishonesty in the performance of his duties." Evidence of Mr. Bohlig's dishonesty with another employer was circumstantial evidence of a dishonest disposition, rather than evidence of dishonesty on the occasion in question. See Advisory Committee Note to F.R.E. 404 (character may be essential element of claim or defense or circumstantial evidence of disposition). Because dishonesty on some other occasion is not an element of the Corporation's defense, this evidence was not admissible under V.R.E. 405(b).

Finally, the Corporation argues that the evidence of the prior termination for dishonesty was admissible under V.R.E. 608, which governs the admissibility of evidence of the truthfulness or untruthfulness of a witness. Subsection (b) governs specific instances of conduct and states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into *on cross-examination* of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

V.R.E. 608(b) (emphasis added). Evidence of specific instances of conduct offered to attack the witness's credibility are not admissible through other witnesses as a matter of law. See 28 C. Wright & V. Gold, Federal Practice and Procedure § 6117, at 88 (1993) (extrinsic evidence of witness's credibility is evidence offered through another witness). It is, however, within the court's discretion to allow such evidence on cross-examination of the witness himself. See Reporter's Notes to V.R.E. 608 (subsection (b) limits use of specific instances of conduct to inquiry on cross-examination). In this case, the evidence of

Mr. Bohlig's dishonesty was extrinsic evidence because it was presented on direct examination of Mr. Russell. Although it was within the discretion of the court to allow such evidence on cross-examination of Mr. Bohlig, the court had no discretion to admit this evidence through another witness. We conclude that the court erred by admitting this evidence as a matter of law. Cf. *Haworth v. Feigon*, 623 A.2d 150, 160 (Me. 1993) (affirming ruling that evidence that builder used marijuana on previous job was not relevant to credibility or to show builder drank alcohol on subsequent job).

The Corporation contends that Mr. Bohlig failed to show that the error in admitting this evidence was prejudicial. We disagree. Of the three methods of proving character, "evidence of specific instances of conduct is the most convincing." Advisory Committee Note to F.R.E. 405. It also "possesses the greatest capacity to arouse prejudice." *Id.* This type of character evidence can undermine accurate fact finding because of the tendency of juries to give it too much weight. 28 C. Wright & V. Gold, Federal Practice and Procedure § 6112, at 34. This tendency explains, in part, why V.R.E. 608 reflects a preference for character evidence in the form of reputation or opinion evidence. See *id.* The prejudice is greatest, of course, where the erroneously admitted specific instance of conduct is similar to the conduct at issue in the case.

Here, the Corporation was required to prove that it terminated Mr. Bohlig for dishonesty in the performance of his duties on this occasion. It was highly prejudicial to admit evidence that he was terminated from his previous position for dishonesty and had substantial potential for influencing the jury that Mr. Bohlig acted in conformity therewith on this occasion. Although the character evidence was particularly damaging to the claim for severance pay, it also impermissibly attacked Mr. Bohlig's character for truthfulness in general, which undermined all of his claims, including his claims under paragraph 2 for annual bonuses and relocation-expense reimbursement. Moreover, the evidence was emphasized by counsel for the Corporation during both opening and closing arguments. See *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 7-8, 652 A.2d 475, 480 (1994) (evidence erroneously admitted was prejudicial where highlighted in closing argument). We conclude that the error was not harmless. Because Mr. Bohlig has shown error affecting all theories of recovery, we must remand for a new trial.

### III. Prejudgment Interest

On cross-appeal, the Corporation maintains that the court erred by failing to award prejudgment interest for the period prior to January 1992. During the trial, the judge held a conference in chambers off the record, at which the parties stipulated that, if the jury rendered a verdict for the Corporation on its claim, the award would be for $218,413.20, and the court would calculate interest from January 1992. Three days after the court entered judgment for the Corporation for $218,413.20, plus $151,367.30 interest calculated from January 1992, the Corporation moved under V.R.C.P. 60(b)(6) for relief from judgment, requesting prejudgment interest for the period prior to January 1992. With its motion, it submitted an affidavit of the Corporation's treasurer and two exhibits he prepared to indicate the Corporation's calculation of pre-January 1992 interest. Following a hearing, the court denied the motion.

The Corporation contends that it did not waive prejudgment interest for the period prior to January 1992. It maintains that the principal amount Mr. Bohlig owed the Corporation did not change after December 31, 1991, when Mr. Bohlig stopped working for the Corporation. Prior to that date, the principal amount owing changed from month to month as Mr. Bohlig incurred more expenses or made payments to the Corporation. As a result, it argues that it stipulated to have the court calculate the interest beginning in January 1992 because this is a fairly straight forward calculation. The Corporation argues that this stipulation did not, however, waive interest for the period prior to January 1992. Ironically, it requests that we remand for the court to calculate the pre-January 1992 interest.

We will uphold the trial court's denial of a V.R.C.P. 60(b) motion unless the moving party shows that the court abused its discretion. See *Bingham v. Tenney*, 154 Vt. 96, 99, 573 A.2d 1185, 1186 (1990). The rule is not an "open invitation to reconsider matters concluded at trial," but should be applied only in extraordinary circumstances. *Olde & Co. v. Boudreau*, 150 Vt. 321, 324, 552 A.2d 793, 795 (1988). V.R.C.P. 60(b) provides that the court may relieve a party from final judgment for five enumerated reasons, and subsection (6) allows relief for "any other reason justifying relief from the operation of the judgment." Further, subsection (6) "may be invoked only when a ground justifying relief is not encompassed within any of the first five subsections of the rule." *Boudreau*, 150 Vt. at 323, 552 A.2d at 794.

We conclude that there was no abuse of discretion in denying the V.R.C.P. 60(b)(6) motion because the Corporation failed to present any reason justifying such relief. The parties stipulated that the court would calculate prejudgment interest from January 1992, which the court did. Post-judgment, the Corporation attempted to submit new evidence, which was not submitted at trial, as a basis for the court to calculate pre-January 1992 interest. The Corporation presents no reason to justify its failure to present this evidence to the jury, nor its failure to request that the jury establish the dates from which to calculate this interest. Cf. V.R.C.P. 60(b)(2) (court may relieve party from final judgment on ground of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)"). Even if we accept the Corporation's contention that the stipulation did not waive the pre-January 1992 interest, the Corporation failed to satisfy V.R.C.P. 60(b).

*Affirmed, except reversed and remanded for a new trial on the counterclaim.*