Cunavelis v. Giancola d/b/a Edgewood Entm't, No. 731-10-11 Rdcv (Teachout, J., Apr. 6, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Dckt. # 731-10-11 Rdcv** |

**JOHN CUNAVELIS and
MT. MANSFIELD MEDIA, INC.,**
     **Appellants**

     **v.**

**DAVID GIANCOLA
d/b/a EDGEWOOD ENTERTAINMENT,**
     **Appellee**

### SMALL CLAIMS APPEAL
### Decision and Opinion

There are cross-appeals in this case from a judgment of the Small Claims Court dated September 27, 2011. The Small Claims Court entered judgment for Plaintiff David Giancola against Defendant John Cunavelis in the amount of $2,463.75. On appeal, Mr. Cunavelis argues that the Small Claims Court erred by entering judgment against him personally instead of against Mt. Mansfield Media, Inc., ignoring his evidence, showing bias toward Mr. Giancola, and miscalculating damages. In his cross-appeal, Mr. Giancola argues that the Small Claims Court erred by not finding additional damages. Oral argument was heard on January 17, 2012. John Cunavelis was present on behalf of himself and his business corporation, Mt. Mansfield Media, Inc. David Giancola was present and represented himself as the sole proprietor of Edgewood Entertainment.

It is not the function of the Superior Court to substitute its own judgment for that of the Small Claims Court Judge. Rather, the role of the Superior Court is to determine whether or not the evidence presented at the hearing supports the facts that the Judge decided were the credible facts, and whether or not the Judge correctly applied the proper law and procedure.

*Proceedings Before Small Claims Court*

Mr. Giancola, on behalf of Edgewood Entertainment, filed a small claims complaint on May 10, 2011, alleging that Mt. Mansfield Media, Inc. and Mr. Cunavelis breached a lease for motion picture lighting equipment by refusing to pay for the equipment while also refusing to return the equipment. The complaint sought damages both for unpaid rental fees and for the value of the equipment that Mt. Mansfield Media retained. Mr. Cunavelis, on behalf of Mt. Mansfield Media, filed an answer stating that the parties had entered into an oral lease-to-purchase agreement.

The Small Claims Court held a hearing on September 14, 2011. At the start of the hearing, the Small Claims Judge informed both parties that she knew Mr. Giancola's parents. She further stated that she was aware that Mr. Giancola was their son, but that she did not have any type of relationship with Mr. Giancola. She went on to state that she did not believe her relationship with Mr. Giancola's parents would pose any type of problem for her in deciding the case, but that she wanted to acknowledge it for the record and to give Mr. Cunavelis the opportunity to object if he desired. Mr. Cunavelis responded that he had no problem with the judge and he agreed that it would not be an issue. He did not request that the judge recuse herself.

The Small Claims Judge next inquired about whether this case was being brought between business entities or individuals. Mr. Giancola responded that he put both the business names and the individual names in the complaint because he did not know what would be proper. Mr. Cunavelis then moved to have himself dismissed as a defendant because the suit pertained to business contracts on which only Mt. Mansfield Media, Inc. was liable. The court stated that it would wait and see how the evidence came in before ruling on the motion to dismiss Mr. Cunavelis.

The evidence included much conflicting testimony. The two key areas of disagreement were whether Mt. Mansfield Media continued to retain any of Edgewood Entertainment's equipment and whether the parties reached an oral "rent-to-own" contract allowing for Mt. Mansfield Media to eventually gain title to Edgewood's equipment. Mr. Giancola, on the one hand, and Mr. Cunavelis and his fellow employee Brian Stephenson, on the other, presented very different evidence with regards to these two questions.

Mr. Giancola testified that both parties desired a flexible arraignment whereby Mt. Mansfield Media would pay a fixed rate of $750 per month to take as much or as little of Edgewood's equipment as it needed at the time. As the arrangement evolved, Mt. Mansfield Media would store this equipment on its premises with the understanding that Edgewood could come reclaim it as needed. A written contract signed August 30, 2010 provided the inventory list for the equipment that Mt. Mansfield Media had taken. Mr. Giancola also testified about an August 4, 2010 contract, which predated the flexible arrangement. He stated that Mt. Mansfield Media had never returned any of the equipment rented on August 4, 2010.

Mr. Giancola testified that the parties never agreed on an oral rent-to-own agreement. He acknowledged that a rent-to-own was one possible idea that was discussed, but he stated that the parties ultimately agreed to continue with this flexible rental arrangement. He noted that all of the billing invoices paid by Mt. Mansfield Media stated "rental" and did not state "rent-to-own" or "rent-to-purchase."

The arrangement between the parties broke down in February 2011. At this point, Mt. Mansfield Media believed that it had paid a sufficient amount to take ownership of all the equipment and ceased paying the $750 per month. After a series of unsuccessful negotiations, Mr. Giancola decided to repossess the equipment. On April 21, 2011, Mr. Giancola went to Mt. Mansfield Media's place of business and took back all the equipment that he believed belonged

2

to him. He testified that he was not able to recover every item listed in the August 30 inventory and that he sought damages for those unrecovered items in addition to unpaid rental fees and the unreturned items detailed in the August 4 contract.

The witnesses on behalf of Mt. Mansfield Media disputed much of Mr. Giancola's testimony. They stated that all of the equipment from the August 4 contract was returned before August 30, when the equipment in the second contract was taken out. They also testified that Mt. Mansfield Media no longer retained any of Edgewood's equipment as Mr. Giancola had successfully repossessed all of the remaining equipment on April 21, 2011.

The Mt. Mansfield Media witnesses also testified concerning what they believed was an oral rent-to-own agreement entered into on September 23, 2011. On that date, Mr. Giancola came to the Mt. Mansfield Media offices. Mr. Cunavelis and Mr. Stephenson testified that, after a lengthy discussion entirely concerned with a possible rent-to-purchase agreement, such an agreement was entered into. Mr. Giancola directly contradicted this testimony and stated that a rent-to-purchase agreement was never discussed at this meeting and that the parties never reached such an agreement.

Further testimony on behalf of Mt. Mansfield Media was that it stopped paying the rental fees in February 2011 because the total amount of rental fees paid up to that point well exceeded the total value of all the equipment if it had been purchased new. Mr. Cunavelis and Mr. Stevenson thus believed that they were now the owners of the equipment under the oral rent-to-own contract. They were surprised to find out when they contacted Mr. Giancola that he denied the existence of any rent-to-own agreement.

The Small Claims Court Judge issued a written decision on September 27, 2011. She concluded that the parties had a written contract governing the rental of equipment, and that they did not reach an oral contract to alter the terms of the written contract. The Court found that Defendant breached the contract in February 2011 when it stopped paying for the equipment rental. The Court also concluded that Plaintiff failed to meet its burden of proof with regard to its claim that Defendant retained its equipment. On these bases, the Court calculated Plaintiff's damages at $2,385.00, accounting for the missed rental payments in February, March, and April at $795.00 per month (including rental at $750.00 per month and sales tax at $45.00 per month). The written decision did not address Mr. Cunavelis's motion to dismiss himself personally as a defendant.

*Claims on Appeal*

Appellant raises four claims of errors on appeal: 1) the Small Claims Court judgment improperly ran against Mr. Cunavelis personally and not against Mt. Mansfield Media, Inc., 2) the Small Claims Judge was biased because of her relationship with Mr. Giancola's parents, 3) the Small Claims Court ignored evidence of an oral "lease to purchase" contract, and 4) the Small Claims Court miscalculated the measure of damages. On cross-appeal, Mr. Giancola argues that the Small Claims Court erred in calculating damages by omitting the cost of equipment that was not returned.

3

*Individual Liability*

On appeal, Mr. Cunavelis renews his request, originally made below, that he be dismissed as a defendant. The evidence below showed that this case involved business dealings between Edgewood Entertainment, a proprietorship of Mr. Giancola, and Mt. Mansfield Media, Inc., of which Mr. Cunavelis is an officer. There was no evidence that Mr. Cunavelis sought to rent the film production equipment for his own personal use. Rather, the equipment was rented for use in Mt. Mansfield Media's film production business. Mt. Mansfield Media, Inc. is a valid Vermont corporation and a separate legal entity from Mr. Cunavelis.

In order to hold Mr. Cunavelis personally liable for the breach of contracts entered into by Mount Mansfield Media, the Court would have to pierce the corporate veil. The corporate veil may be pierced when the corporate form has been used to perpetrate a fraud or where the interests of fairness, equality, and the public need dictate. *Agway, Inc. v. Brooks*, 173 Vt. 259, 262-63 (2001). In the latter group of cases, corporate formality has usually been entirely ignored and the corporation is merely a straw figure for its owner. See *id*. at 263-64; *In re Vt. Toy Works, Inc.*. 135 B.R. 762, 770 (D. Vt. 1991). There is no evidence here that Mr. Cunavelis ever abused the corporate form, and he clearly negotiated the contracts with Edgewood in his capacity as a corporate officer of Mt. Mansfield. In the absence of any evident of abuse of the corporate form, Mr. Cunavelis cannot have personal liability for a breach of contract by the corporation.

The Small Claims Judge did not address the distinction between Mr. Cunavelis and the corporation Mount Mansfield Media, Inc. in her decision. The complaint listed both John Cunavelis and "Mt. Mans. Media" as Defendants. The caption on the Findings of Fact, Conclusions of Law and Order issued September 27, 2011 identifies the Defendant as "James (sic) Cunavelis dba/ Mt. Mansfield Media, Defendant." The Court issued Judgment against "John Cunavelis" only in his individual capacity, although the form also states that the "Defendant was represented and appeared by John Cunavelis." It was error for the Judge below to fail to address the motion of individual Defendant John Cunavelis to be dismissed in his individual capacity, and error to issue a judgment against him personally. The evidence is undisputed that the proper Defendant against which the judgment should issue is Mount Mansfield Media, Inc.

*Judicial Bias*

At the small claims hearing, the Small Claims Judge raised the issue of her relationship with Mr. Giancola's parents and explicitly asked Mr. Cunavelis if he objected to her presiding over the case. Mr. Cunavelis replied that he had no problem with her presiding. Therefore, this issue has been waived and is not preserved for appeal. See *DeLeonardis v. Page*, 2010 VT 52, ¶ 31, 188 Vt. 94.

*Lease-to-Purchase Oral Contract*

Appellant asserts that the Small Claims Judge ignored its evidence of an oral lease-to-purchase contract. The Judge did not ignore the evidence. On the contrary, it is evident that the Small Claims Judge considered the evidence about whether an oral lease-to-purchase agreement

had been formed and did not find it to be credible. The Small Claims Court concluded: "Although there were discussions to possibly change the [written] contract, there was never an agreement between the parties to other terms that would change the terms of the rental contract." This is a finding of fact based on consideration of conflicting evidence.

This conclusion necessarily rejects Appellant's theory that an oral lease-to-purchase contract was formed. There was evidence presented at the hearing that cut both ways; therefore, the Small Claims Judge was ultimately left with an issue of credibility as to whether a supplemental oral contract was formed. The trial court is in the best position to determine the credibility of witnesses, and the court's decision will not be overturned simply because there was conflicting evidence. *Wells v. Rouleau*, 2008 VT 57, ¶ 12, 184 Vt. 536. All that is required is that the Small Claims Court's conclusions are supported by evidence in the record, which is the case here. *Brandon v. Richmond*, 144 Vt. 496, 498 (1984).

## *Calculation of Damages*

Both parties disagree with the Small Claims Court's measure of damages. Appellant argues that damages were improperly awarded for the period between when the business relationship between the parties broke down in February 2011 and when Mr. Giancola reclaimed the rented equipment in late April 2011. The problem with Appellant's argument is that Mt. Mansfield Media continued to retain the rented equipment during this period. Edgewood Entertainment was thus precluded from re-renting the equipment or using the equipment itself until the time it repossessed the equipment. Mt. Mansfield Media did not pay rental fees during this period nor did it return the equipment. Mr. Giancola presented evidence that through phone calls and collection letters he repeatedly requested payment until he decided that payment was not forthcoming and he chose to repossess the equipment on April 21, 2011. Under these facts, the Small Claims Court had an evidentiary basis to conclude that Plaintiffs were entitled to the unpaid rental fees for the months of February, March, and April.

Turning to the argument on cross-appeal, Appellee contends that the Judge improperly omitted from the judgment damages for equipment not recovered from Mt. Mansfield Media. The Small Claims Court acknowledged the claim for over $6,000 in damages in missing equipment, but once again did not find the evidence supporting it to be credible. The Small Claims Court specifically found that Plaintiff failed to meet its burden of proof on this issue. As the evidence presented at the hearing was in conflict, the trial judge had a proper basis for determining credibility and deciding the facts as she did as long as there was evidence in the record to support her finding, which there was. Again, the trial court finding will not be overturned on appeal simply because there was conflicting evidence. This Court thus does not have a legal basis to reverse the determination of damages. *Wells v. Rouleau*, 2008 VT 57, ¶ 12, 184 Vt. 536. Because the damage award is supported by the record, it is affirmed.

ORDER

The Judgment of the Small Claims Court dated September 27, 2011 must be *reversed and remanded* due to the failure to dismiss John Cunavelis as a Defendant and the error in issuing the judgment against Defendant Mount Mansfield Media, Inc.  In all other respects, the decision is *affirmed.*

The case is remanded to the Small Claims Court to issue a corrected Judgment against Mount Mansfield Media, Inc. and not against John Cunavelis.

Dated at Rutland, Vermont this 5th day of April, 2012.

_____
Hon. Mary Miles Teachout
Superior Judge